IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES FOREST SERVICE, an agency of the United States Department of Agricultural,<br><br>    Defendant. | Civil. No. 05-6015-HO<br><br>ORDER |

Defendant, the United States Forest Service, employed Shane Heath and Jeff Allen as firefighters. On July 20, 2003, the Forest Service engaged a wild fire in the Salmon-Challis National Forest.[1] On July 22, 2003, fighting fire in a high draw, Heath and Allen were overrun by a wall of flame and perished. The Occupational

---

[1] The Fire later became known as the Cramer Fire.

1       - ORDER

Safety and Health Administration (OSHA), the Office of the Inspector General of the Department of Agricultural (OIG), the United States Attorney of the District Idaho, and defendant investigated the incident.

OSHA cited defendant for serious, willful and repeated unsafe working conditions. The U.S. Attorney's investigation resulted in the incident commander, Alan Hackett, being placed on federal probation for 18 months and termination of Hackett's employment.[2] Defendant's investigation resulted in an accident investigation report which cited inadequate management oversight, failure to comply with policy, failure to recognize and adjust fire suppression and tactics, and shortage and mis-allocation of resources as factors contributing to the deaths of the firefighters.[3]

Plaintiff, pursuant to the Freedom of Information ACT (FOIA), requested an unredacted copy of defendant's accident investigation report. Defendant provided a copy with all names of individuals

---

[2] At the conclusion of probation, Hackett will be free to reapply for employment with the Forest Service. If Hackett successfully completes his pretrial diversion program, the United States Attorney will not prosecute him for manslaughter.

[3] A redacted copy of the accident investigation report can be found at www.fs.fed.us/fire/safety/investigations/cramer. Defendant also produced a management evaluation report in a form which has not been redacted.

redacted, except Hackett's, citing exemption 6 of FOIA in order to protect the personal privacy interests of the individuals involved in the accident.[4] Plaintiff appealed the decision to redact and defendant affirmed its decision.

After plaintiff's appeal, two Forest Service employees allowed an unredacted copy of the accident investigation report to be leaked to a family member of one of the deceased firefighters. Defendant did not authorize the release and initiated disciplinary proceedings. It appears the unredacted copy has not entered the public domain.

Defendant later issued a memorandum announcing that it was disciplining six employees related to the investigation. Defendant is withholding the names of the employees facing discipline out of respect for their privacy interests.

Plaintiff brings this suit seeking disclosure of the names of twenty-two United States Forest Service employees that have been redacted in the accident investigation report for the Cramer Fire. Plaintiff asserts violation of both FOIA, 5 U.S.C. § 552 et. seq., and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et. seq. Specifically, plaintiff maintains that defendant has unlawfully

---

[4]As part of his pretrial diversion program, Hackett agreed to waive his right to confidentiality regarding the diversion program and the reasons for his termination.

asserted that FOIA's exemption 6 (personal privacy) prevents the disclosure of the names and therefore seeks injunctive relief directing defendant to promptly provide it with an unredacted copy of the Cramer Fire report. Plaintiff also seeks declaratory relief that defendant violated FOIA and the APA.

The parties agree that the court has sufficient factual information to decide this case on summary judgment.

DISCUSSION

Plaintiff alleges that it seeks to publically illuminate the process by which the defendant reviewed the decisions on the Cramer Fire to preserve every opportunity to learn from the mistakes that were made, in the hope that future tragedies can be prevented. Plaintiff contends that: (1) FOIA's exemption 6 cannot apply to something as public as a person's name; or (2) that the strong presumption in favor of disclosure tips the balance in favor of public disclosure compared to a de minimus privacy interest; or (3) that the privacy interest has been erased by virtue of the public disclosure of over a dozen names by other branches of the federal government and the news media.

The FOIA mandates a policy of broad disclosure of government documents when production is properly requested. 5 U.S.C. § 552(a)(3). An agency may deny disclosure of its records only if the

information falls within one of the nine statutory exemptions to the disclosure requirement under 5 U.S.C. § 552(b). Multnomah County Medical Soc'y v. Scott, 825 F.2d 1410, 1413 (9th Cir. 1987). The government has the burden of establishing that one of the exemptions applies. Id. Exemptions to the FOIA are to be narrowly construed. John Doe Agency v. John Doe Corp., 493 U.S. 146, 151 (1989).


A.   Applicability of Exemption 6

The general philosophy of the FOIA is full agency disclosure unless information is exempted under clearly delineated statutory language. Department of the Air Force v. Rose, 425 U.S. 352, 260-61 (1976).

> On complaint, the district court of the United States has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

5 U.S.C. § 552(a)(4)(B)

Under subsection (b)(6), "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempted from disclosure. With this exemption, Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny. The device adopted to achieve that balance was the limited exemption, where privacy was threatened, for "clearly unwarranted" invasions of personal privacy. Rose, 425 U.S. at 372.

Plaintiff argues that the requested documents are not personnel, medical or similar files. Thus, the threshold question is whether the requested documents are "personnel and medical files [or] similar files" within the meaning of 5 U.S.C. § 552(b)(6).

Personnel files ordinarily contain information such as "where [an individual] was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, [and] evaluations of his work performance." Rose, 425 U.S. at 377. The Supreme Court has defined "similar file" broadly as government records containing "information which applies to a particular individual." United States Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982). The accident report is a narrative that describes the

behavior of several federal employees in detail and the employees may be readily identified through the report. Because the Court has given a broad definition to "similar file", this court should find the Cramer report to fall within that definition. Therefore, the inquiry moves to whether disclosure of the requested records in this case would constitute a "clearly unwarranted invasion of personal privacy" within the meaning of 5 U.S.C. § 552(b)(6).

B.  Balancing

The Ninth Circuit has used the following test to determine whether an invasion of privacy is clearly unwarranted: (1) the plaintiff's interest in disclosure; (2) the public interest in the disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternate means of obtaining the requested information. Multnomah County Medical Soc'y, 825 F.2d at 1413. However, the Supreme Court has more recently stated

> the only relevant public interest in the FOIA balancing analysis" is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' " Id., at 497, 114 S.Ct., at 1013 (emphasis added) (quoting Department of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989)). " '[T]he purposes for which the request for information is made,' " we said, have no bearing on whether information must be disclosed under FOIA. 510 U.S., at 496, 114 S.Ct., at 1013 (quoting

Reporters Comm. for Freedom of Press, supra, at 771, 109 S.Ct., at 1480).

Bibles v. Oregon Natural Desert Assn., 519 U.S. 355, 795-96 (1997). Therefore, plaintiff's personal interest in the report has no bearing on the analysis. Thus, the test the court uses here is to balance public interest in disclosure against the interest Congress intended the exemption to protect. See Department of Defense v. FLRA, 510 U.S. 487, 495 (1994). The interest protected by the exception is the privacy of the employees named in the report. Plaintiff asserts that the public's interest in disclosure is agency accountability.

The Cramer Fire accident investigation report exhaustively details the events surrounding the accidental deaths. The report identifies 23 USFS employees by name and job title and describes their conduct or observations during the time frame of the Cramer Fire. Defendant asserts that the privacy interest of the 22 individuals whose names are redacted is significant. Defendant has discerned two classes of individuals mentioned in the report: (1) employees who face the possibility of disciplinary action and (2) employees who cooperated with the accident investigation. Defendant asserts privacy interests arising from possible

embarrassment or stigma for the former[5] and interests in not being associated with the embarrassment and stigma connected to the Cramer Fire as well as avoiding harassment for the latter. The fire attracted public attention and scrutiny and the release of the names of employees facing discipline could subject them to embarrassment, shame, stigma and harassment, especially in light of the fatalities involved.

The employees who cooperated face potential embarrassment and stigma as well. In addition, these employees could face harassment. These employees are low and mid-level employees.

Plaintiff asserts that disclosure of the withheld identities would permit the public to: (1) ascertain the qualifications and experience of the personnel involved in the Cramer Fire to determine whether the Forest Service employs appropriately trained firefighters; (2) determine whether the Forest Service reassigns firefighters to non-firefighter positions when their violations of safety rules cause fatalities; (3) determine whether the Forest Service accurately recounted in the Cramer Investigative Report the events that led to the deaths of two firefighters; and (4)

---

[5]The report names five of the six employees who were proposed for discipline and since Hackett has been named, four employees fall into this category. None of the proposed discipline for these four has been finalized and none of the employees hold senior positions of relative influence with the USFS.

9        - ORDER

reconcile inconsistencies in the Cramer Report that may shed additional light on what happened and how it can be prevented in the future.

Plaintiffs note the OSHA findings that the Cramer Fire conditions and circumstances were extraordinarily similar to the Thirtymile Fire and the Storm King Fire. While this may demonstrates a need for further review, it does not show that disclosure of private personnel information would substantially further the goal of future prevention. Plaintiff also provides an affidavit from former USFS Deputy Chief, James Furnish, opining on the importance of disclosure of the names of those involved. Plaintiff also notes that in the past, the USFS has disclosed the names of employees involved in reports following deaths in a forest fire.

USFS employees are publically employed and work out in the open. The names of the employees in and of themselves holds little or no expectation of privacy. The expectation, however, increases when attached to stigmatizing events. Certainly public employees should expect privacy when it comes to stigmatizing personnel matters, especially when associated to such a tragic event.[6] There

---

[6]Furnish states that when he worked on fires, he was never aware of anyone considering their names to be confidential and that failure to release the names prevents full accountability and understanding of the tragedy and casts an unnecessary shadow of

10    - ORDER

are disciplinary proceedings ongoing against some of the employees and disclosure of their names attached to such private personnel matters presents a clearly unwarranted invasion of privacy. Release of the names would shed little or no additional information on the conduct of the USFS with respect to the Cramer Fire that would contribute to the public's understanding of governmental operations with respect to forest fires in general and the Cramer Fire specifically.

The withholding of the information does not violate FOIA as it is exempted from disclosure. Therefore, defendant has not violated the APA by taking action allegedly contrary to law. See 5 U.S.C. § 706(A)(c), (d), and (f).

C.   Public Disclosure

Plaintiff argues that the news media has already reported the names of several individuals holding positions of responsibility

---

doubt over the agency. Furnish concludes that it is only transparency of operation afforded by the fullest reasonable measure of public accountability that will ensure that the agency functions effectively and responsibly for it primary constituency; the American public. However, the embarrassment and possible harassment faced by low level employees through production of their personnel information is a clearly unwarranted invasion of privacy that does little to shed light on the tragedy given the already substantial disclosure of the events in question.

11      - ORDER

and that some have been disciplined, reassigned, or resigned. Plaintiff further notes that the OSHA briefing report contains the names of nine Forest Service employees who were present on the fire who played key roles. Using these public documents along with the OIG report, plaintiff argues, the names can be associated with titles in defendant's report. Thus, plaintiff argues that the privacy interest of these individuals no longer can provide a basis for withholding information. Nonetheless, as noted above, FOIA exempts disclosure by defendant.

D. Timely Response

Plaintiff also requests a declaration that defendant failed to comply with the 20 day deadline for responding to a FOIA request. Defendant did miss the deadline by two days. Defendant did eventually respond prior to a suit being filed, thus triggering plaintiff's need to exhaust administrative remedies. While plaintiff is correct that defendant violated FOIA in this regard, the issue of exhaustion is not before the court and such a declaration would serve no purpose.

CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment (#8) is denied and defendant's motion for summary judgment (#16) is granted. This suit is dismissed.

DATED this 20th day of Dec., 2005.

*Michael C. Hogan*
UNITED STATES DISTRICT JUDGE